**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BRETT SOLOWAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case Number: 1:24-cv-02925 |
| v. | ) | |
| | ) | Hon. Jeffrey I. Cummings |
| ALM GLOBAL LLC and HUGO GUZMAN, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

**Table of Contents**

**Page**

TABLE OF AUTHORITIES ...................................................................................... ii

STATEMENT OF FACTS ........................................................................................ 1

LEGAL STANDARD .............................................................................................. 2

ARGUMENT ......................................................................................................... 2

I.    Defendants' Publications About Soloway Are Defamatory *Per Se*. ..................... 2

II.    The Innocent Construction Rule Is Inapplicable. ............................................ 5

III.    The Publications Are Also Defamatory *Per Quod*. ......................................... 8

IV.    The Fair Reporting Privilege Is Inapplicable. ............................................... 10

V.    It Is Too Premature To Consider The Substantial Truth Defense. ..................... 12

VI.    Defendants' Publications Do Not Constitute Protected Opinions. .................... 13

CONCLUSION ..................................................................................................... 15

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Becker v. Zellner*,
684 N.E.2d 1378 (Ill. App. Ct. 1997) ........................................................................9

*Berkos v. Nat'l Broad. Co. Inc.*,
515 N.E.2d 668 (Ill. App. Ct. 1876) ........................................................................12

*Black v. Wrigley*,
2017 WL 8186996 (N.D. Ill. Dec. 8, 2017) ............................................................12

*Bryson v. News Am. Publications, Inc.*,
672 N.E.2d 1207 (Ill. 1996) .......................................................................................2

*Clarage v. Kuzma*,
795 N.E.2d 348 (Ill. App. Ct. 2003) .........................................................................4

*Eubanks v. Northwest Herald Newspapers*,
922 N.E.2d 1196 (Ill. App. Ct. 2010) ......................................................................12

*Gen. Elec. Capital Corp. v. Lease Resolution Corp.*,
128 F.3d 1074 (7th Cir. 1997) ...................................................................................7

*Gertz v. Robert Welch*,
418 U.S. 323 (1974) ....................................................................................................2

*Giant Screen Sports v. Canadian Imperial Bank of Commerce*,
553 F.3d 527 (7th Cir. 2009) .................................................................................5, 7

*Gibson v. Philip Morris*,
685 N.E.2d 638, 644 (Ill. App. Ct. 1997) ...............................................................12

*Gryga v. Henkels & McCoy Grp., Inc.*,
2019 WL 3573565 (N.D. Ill. Aug. 6, 2019) .............................................................9

*GTC Fin. Servs., Ltd. v. Asset Builders Assoc., LLC*,
2014 WL 3610989 (N.D. Ill. July 22, 2014) ............................................................3

*Howell v. Blecharczyck*,
457 N.E.2d 494 (Ill. App. Ct. 1983) .......................................................................15

*John E. Reid and Assoc., Inc. v. Netflix, Inc.*,
2022 WL 1330657 (N.D. Ill. Mar. 23, 2020) .........................................................10

*Kolegas v. Heftel Broadcasting Corp.*,
    607 N.E.2d 201 (Ill. 1992) ...................................................................2, 3, 4, 14

*Kozlowski v. Greenridge Farm, Inc.*,
    338 F.Supp.3d 828 (N.D. Ill. 2018) ...................................................................14

*Kurczaba v. Pollock*,
    742 N.E.2d 425 (Ill. App. Ct. 2000) ..................................................................11

*Levin v. Abramson*,
    2020 WL 2494649 (N.D. Ill. May 13, 2020) ......................................................13

*Lott v. Levitt*,
    469 F.Supp.2d 575 (N.D. Ill. 2007) ...................................................................14

*Lowe v. Rockford Newspaper, Inc.*,
    534 N.E.2d 549 (Ill. App. Ct. 1989) ..................................................................11

*Malec v. City of Joliet*,
    2023 WL 3200098 (N.D. Ill. May 2, 2023) ......................................................6, 7

*MFB Fertility, Inc. v. Action Care Mobile Veterinary Clinic, LLC*,
    2024 WL 1719347 (N.D. Ill. Apr. 22, 2024) ......................................................7

*Mogan v. Portfolio Media, Inc.*,
    2024 WL 532229 (N.D. Ill. Feb 9, 2024) ..........................................................12

*Morton Grove Pharm., Inc. v. Nat'l Pediculosis Ass'n, Inc.*,
    494 F. Supp. 2d 934 (N.D. Ill. 2007) ..................................................................8

*Muzikowski v. Paramount Pictures Corp.*,
    2003 WL 22872117 (N.D. Ill. Dec. 3, 2003) ......................................................4

*Muzikowski v. Paramount Pictures Corp.*,
    322 F.3d 918 (7th Cir. 2003) .........................................................................3, 13

*Parker v. House O'Lite Corp.*,
    756 N.E.2d 286 (Ill. App. Ct. 2001) ....................................................................3

*Patlovich v. Rudd*,
    949 F.Supp.585 (N.D. Ill. 1996) .........................................................................2

*Pease v. Int'l Union of Operating Eng'rs Local 150*,
    567 N.E.2d 614 (Ill. App. Ct. 1991) ..................................................................15

*Pippen v. NBC Universal Media, LLC*,
    734 F.3d 610 (7th Cir. 2013) ...............................................................................9

*Pope v. Chronicle Pub. Co.*,
    95 F.3d 607 (7th Cir. 1996) ...................................................................................................8

*Powell v. XO Servs., Inc.*,
    781 F.Supp.2d 706 (N.D. Ill. 2011) .........................................................................................3

*Quinn v. Jewel Food Stores, Inc.*,
    658 N.E.2d 1225 (Ill. App. Ct. 1995) ....................................................................................15

*Solaia Tech., LLC v. Specialty Pub. Co.*,
    852 N.E.2d 825 (Ill. 2006)..................................................................................11, 12, 14, 15

*Syscon, Inc. v. Vehicle Valuation Servs., Inc.*,
    274 F.Supp.2d 975 (N.D. Ill. 2003) ........................................................................................2

*Tamburo v. Dworkin*,
    2011 WL 13315233 (N.D. Ill. Sept. 21, 2011) .....................................................................13

*Tirio v. Dalton*,
    2019 IL App (2d) 181019 ......................................................................................................14

*Tuite v. Corbitt*,
    866 N.E.2d 114 (Ill. 2006) ......................................................................................................4

*Tunca v. Painter*,
    2012 IL App (1st) 093384 (2012)............................................................................................8

*Van Vliet v. Cole Taylor Bank*,
    2011 WL 148059 (N.D. Ill. Jan. 18, 2011) .............................................................................9

**Other Authorities**

CAMBRIDGE UNIV. DICTIONARY..............................................................................................3, 6

Fed. R. Civ. P. 9(b) ......................................................................................................................9

Fed. R. Civ. P. 12(b)(6)................................................................................................................2

Fed. R. Evid. 201(b)......................................................................................................................7

MERRIAM-WEBSTER DICTIONARY .................................................................................................3

Defendants know their Articles about Brett Soloway are false, defamatory, and damaging. They had no basis to suggest that Soloway's exit as General Counsel from Cushman & Wakefield was due to events involving Cushman as third party in a legal case involving Trump seven months earlier. Defendants unjustly linked these events, consequently leaving Soloway as an unsuspecting victim whose professional standing has been destroyed. The subsequent reactions of third parties have tied the disparagement of the Articles to his employment prospects. This underscores the inherently destructive nature of the publications, evident in their very wording. Defendants now fabricate post-hoc justifications for why their Articles are not defamatory, asserting that they should be construed as "innocent," considered "fair reporting" of legal proceedings, are "substantially true," or are "protected opinion." But the Articles are straightforward in their disparagement of Soloway to a reasonable reader. Defendants' motion should be denied.

## STATEMENT OF FACTS

Defendants wrote and published two false and defamatory Articles and a tweet about Soloway in April 2023 and in September 2023.[1] (*See e.g.,* Dkt. 1, Compl. ¶¶2, 8). Defendants' content falsely connects Soloway's departure to a court's ruling in a highly publicized New York case involving Trump. (*Id.* ¶3). Soloway's counsel and Cushman representatives wrote to Defendants, informing them that the Article was false and defamatory and requesting it be removed. (*Id.* ¶¶77-83). Defendants refused to issue a correction, retraction, or apology. (*Id.* ¶83). Defendants then refashioned, truncated, and republished a substantially similar Article in September 2023. (*Id.* ¶84). With these two Articles and a tweet, Defendants irreparably destroyed Soloway's esteemed thirty-year legal career and his immeasurable business reputation. (*Id.* ¶1). Now that his name has been falsely tied to the Trump litigation and supposedly poor job

---

[1] The Articles were published in several of Defendants' online legal publications, including on Law.com, in Corporate Counsel and in the New York Law Journal. (*Id.* ¶6).

1

performance, Soloway has been stricken from even being considered as a candidate for employment. (*Id.* ¶103). Soloway had no choice but to sue to protect his good name.

## LEGAL STANDARD

An individual's right to protect their good name "reflects no more than our basic concept of the essential dignity and worth of every human being—a concept at the root of any decent system of ordered liberty." *Gertz v. Robert Welch*, 418 U.S. 323, 341 (1974). "A statement is considered defamatory if it tends to cause such harm to the reputation of another that it lowers that person in the eyes of the community or deters third persons from associating with [him]." *Bryson v. News Am. Publications, Inc.*, 672 N.E.2d 1207, 1214 (Ill. 1996). "Dismissal under Rule 12(b)(6) is improper 'unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Patlovich v. Rudd,* 949 F.Supp.585, 588 (N.D. Ill. 1996)[2]. The court "must view all facts alleged in the complaint and any inferences reasonably drawn therefrom in the light most favorable to the plaintiff." *Syscon, Inc. v. Vehicle Valuation Servs., Inc.*, 274 F.Supp.2d 975, 976 (N.D. Ill. 2003). Soloway's allegations of defamation against Defendants irrefutably satisfy this "minimal level of scrutiny." *Id.*

## ARGUMENT

### I.    Defendants' Publications About Soloway Are Defamatory *Per Se.*

Defendants' publications are defamatory *per se*; they inherently "cause[] such harm to the reputation" of Soloway, that "it lowers [him] in the eyes of the community [and] deters third persons from associating with him." *Kolegas v. Heftel Broadcasting Corp.*, 607 N.E.2d 201, 206 (Ill. 1992). The publications fall directly within long recognized *per se* categories, as they "impute

---

[2] All citations and quotations omitted unless otherwise specified throughout.

a want of integrity in the discharge of [his] employment duties," and "prejudice" Soloway "in his business" as legal or general counsel to large companies. *Id.* at 207;.

The headline of the April Article is, *Cushman Replaces GC in Wake of Company's Rebuke by Judge in Trump Probe.* (Compl. Ex. 1). The byline reads, "The real estate services giant says it has hired former Archer Daniels Midland attorney Noelle Perkins as legal chief. It didn't explain the departure of GC Brett Soloway, who has been removed from the company's website." (*Id.*). The tweet regurgitates the same defamatory headline. (*Id.*, Ex. 2). It insinuates that Soloway was "replaced" (*i.e.,* removed) "in the wake of" (*i.e.,* because of) a negative legal proceeding involving the Trump organization where Cushman was "rebuked." (*See id.* ¶50). The term "*in the wake of*" refers to something that occurs as a consequence of an event, such as in the sentence, "Airport security was extra tight *in the wake of* yesterday's bomb attacks." *In the Wake of*, CAMBRIDGE UNIV. DICTIONARY. The term "rebuke" means "to criticize sharply." *Rebuke*, MERRIAM-WEBSTER DICTIONARY. Both phrases are negative as it relates to Soloway's departure. The headline alone imputes an "inability to perform" Soloway's "employment duties" and is the definition of "prejudicing" him in his business.[3] *Powell v. XO Servs., Inc.*, 781 F.Supp.2d 706, 713 (N.D. Ill. 2011) (accusations of lying and authoring false documents could be defamatory *per se* because they imputed a lack of ability in employment); *GTC Fin. Servs., Ltd. v. Asset Builders Assoc., LLC*, 2014 WL 3610989, at *4 (N.D. Ill. July 22, 2014) (statements that plaintiff "never intended to act in good faith or to fund this project," imputed that plaintiff was unable to perform his professional

---

[3] The September Article's headline is, *Cushman Replaces GC Who Headed Legal Department During Trump Probe.* (Compl. ¶89; *id.*, Ex. 3). The only difference between the two Articles' headlines is the removal of the phrase, "in the wake of." The defamatory implication of the September Article remains intact. The headline still suggests that Soloway was replaced from his position *because of* a ruling in a sensational court proceeding. *Parker v. House O'Lite Corp.*, 756 N.E.2d 286, 295 (Ill. App. Ct. 2001) (letter was capable of defamatory *per se* construction where it implied an engineer may have committed a crime in his duties of employment); *Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 926 (7th Cir. 2003) (accusation was defamatory *per se* where it implied plaintiff was unlicensed and thus not a legitimate member of his profession).

duties and gave rise to defamation *per se*); *Kolegas*, 607 N.E.2d at 207 (statements that implicitly accused plaintiff of lying and deceit could be found to have prejudiced him in his business and were defamatory *per se*).

The body of the April Article is equally about Soloway's employment performance with its discussion of a New York state court holding Cushman in contempt for a subpoena. (Compl. ¶52); *Muzikowski v. Paramount Pictures Corp.*, 2003 WL 22872117, at *5 (N.D. Ill. Dec. 3, 2003) (gist of the statement could be defamatory *per se* where it depicted plaintiff as "engaging in [occupational] activities that would prompt… possible disciplinary action by regulatory agencies."). The inclusion of a discussion about the legal event implies its significance to Soloway's employment change at Cushman. This is neither a positive nor neutral portrayal. It's a decidedly negative portrayal. A reader can easily infer that Soloway left his employment at Cushman on bad terms because: (1) he was not mentioned in a press release; and (2) his website biography was removed from Cushman's website "without further explanation." (Compl. ¶¶55, 57).[4] The "gist" of the April Article is that Soloway was fired from Cushman for poor job performance. This is false. *Clarage v. Kuzma,* 795 N.E.2d 348, 354 (Ill. App. Ct. 2003) (statement's "gist" was that plaintiff had been lying to government officials, which "effectively impugn[ed] [his] business ethics and portray[ed] him as a businessman undeserving of public trust."); *Kolegas,* 607 N.E.2d at 217 (statements implied that plaintiff was "deliberately attempting to induce… the audience into believing a fictitious event would occur," which stated a claim for defamation *per se*).; *Tuite v. Corbitt*, 866 N.E.2d 114, 129 (Ill. 2006) (defamation *per se* stated where a "reasonable reader" would conclude that the allegedly defamatory passage was intended

---

[4] The byline of the September Article is nearly identical to the byline of the April Article. (*Compare,* "It didn't explain the departure of GC Brett Soloway, who has been removed from the company's website" (April) *with* "It didn't explain the departure of GC Brett Soloway" (September)). There is still a defamatory implication in September's byline. (Compl. ¶92). The "gist" is that Soloway was fired from Cushman because of how he handled the "Trump probe."

to allude to plaintiff's bribery because the book was about "organized crime and corruption in the Chicago area").

## II. The Innocent Construction Rule Is Inapplicable.

Defendants argue that the innocent construction rule requires dismissal. (Dkt. 16, Mot. at 8). They claim that "the Articles are clearly capable of a non-defamatory interpretation" because they "innocuously and truthfully report" that Soloway was "replaced...eight months after a judge" found Cushman "in contempt of court for not complying with subpoenas[.]" (*Id*. at 9). That is quite a leap. Why else discuss both events simultaneously if not to suggest a link? Defendants misunderstand the innocent construction rule.

"The innocent construction rule 'requires courts to consider a written or oral statement in context, giving the words, and their implications, their natural and obvious meaning." *Giant Screen Sports v. Canadian Imperial Bank of Commerce*, 553 F.3d 527, 552-53 (7th Cir. 2009). "Illinois courts emphasize that the interpretation must be *reasonable*." *Id.* at 533 (court's emphasis). In applying the rule, "courts must interpret the words 'as they appeared to have been used and according to the idea they intended to convey to the reasonable reader.'" *Id.* The rule "does not require courts to strain to find an unnatural innocent meaning for a statement when a defamatory meaning is far more reasonable." *Id.* Yet that is exactly what Defendants ask this Court to do. It is quite implausible for a "reasonable reader" to perceive the Articles as presenting any narrative other than Soloway's exit from Cushman being linked to the Trump subpoena matter. Connecting Soloway's departure and the earlier "rebuke," which took place seven months before, serves no purpose other than to (1) suggest that Soloway left Cushman under negative circumstances due to unsatisfactory work; and (2) promote a salacious headline that will garner more "clicks" to Defendants' subscription-based website.

The April 2023 Article omits key context: Cushman's contempt order in the Trump-related case was revoked in August 2022. (Compl. ¶31). The headline highlights the New York court's "rebuke" of Cushman without clarifying that this "rebuke" was reversed one month later, and that Soloway departed from Cushman seven months later. There is no proximity in these two points in time (August 2022 to April 2023), yet the Defendants intentionally link Soloway's departure to the past court "rebuke." This context is crucial in evaluating the innocent construction rule. *Malec v. City of Joliet,* 2023 WL 3200098, at *7 (N.D. Ill. May 2, 2023) (rejecting innocent construction defense where, when read in context, a defamatory meaning of "insubordinate" was "more plausible on the present record" than defendant's "proposed construction," because "[t]he context of a statement is critical in determining its meaning."). Importantly, the headlines of both Articles and the tweet were available for public consumption without being able to read the entirety of the Articles, which is behind a paywall. (Compl. ¶48). That is, the stand-alone defamatory headlines, which damage Soloway outright, were read out of context of the rest of the Articles. Readers without Law.com access saw the headlines, understood the defamatory *per se* meaning, and did not have any of the further alleged "context" of the Articles.

Defendants utilize the Cambridge University Dictionary to support their claim that the term "in the wake of" simply means an event occurring subsequent to and frequently as a result of it (not invariably due to it). (Mot. at 10). They reach too far with this interpretation, particularly when considering the timing and the "rebuke" was later altered. This reading of "in the wake of" requires the court to strain to find an innocent construction. But the rule "does not require courts 'to espouse a naivete unwarranted under the circumstances," and "when a defamatory meaning was clearly intended and conveyed [courts] will not strain to interpret allegedly defamatory words in their mildest and most inoffensive sense in order to hold them non-libelous under the innocent

construction rule." *Giant Screen Sports*, 533 F.3d at 533; *MFB Fertility, Inc. v. Action Care Mobile Veterinary Clinic, LLC*, 2024 WL 1719347, at *8 (N.D. Ill. Apr. 22, 2024) (denying application of the innocent construction rule since "[t]he Court is not obligated to engage in mental gymnastics to find the most innocent possible message."); *Malec*, 2023 WL 3200098, at *7 (innocent construction rule inapplicable because the innocent interpretation was not "reasonable"). It is far more plausible to read a defamatory meaning into the headline, *Cushman Replaces GC in Wake of Company's Rebuke by Judge in Trump Probe* than to read a non-defamatory, innocent construction. The entirety of Defendants' Articles, when read in context and using a "normal understanding" of the words, imply that Soloway was replaced *because of* his role in the Trump matter. *Id.*

Defendants also argue that "The [April] Article also contains an accurate summary of the Cushman Contempt Proceedings, which makes clear that the contempt order was ultimately lifted." (Mot. at 4). For support, Defendants note that hyperlinked within the April Article was a publication by *The Real Deal*, an online real estate trade publication. That piece informs the reader that "appellate 'Judge Lizbeth Gonzales and Cushman … reached an agreement … giving the [Cushman] firm extensions on various segments of the subpoena and wiping out the fine.'" (*Id.*, citing Browning Decl. Ex. A).[5]

Even considering *The Real Deal* does not alter the outcome. First, it was merely an obscure hyperlink in the middle of the April Article and likely was not read by everyone who saw the headline. Second, Soloway is not referenced in *The Real Deal*. The defamatory content is focused

---

[5] Defendants argue that *The Real Deal* publication is incorporated by reference in the Complaint and "must be considered in evaluating the instant motion to dismiss." (*Id.* at n.2). That is questionable at best. The publication was neither referenced nor included in the Complaint and is not a source "whose accuracy cannot be reasonably questioned." Fed. R. Evid. 201(b); *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1083 (7th Cir. 1997).

on Soloway's exit from Cushman, not the old contempt proceeding. Third, *The Real Deal* is not linked or mentioned in the September Article. The latter simply mentions that a judge cited Cushman for contempt for ignoring subpoenas related to Letitia James' investigation into Trump. It does not mention that the contempt ruling was reversed after a month. Finally, non-Law.com subscribers who just saw the headlines would not have seen *The Real Deal* linked, because they would not have had access to the entirety of the Articles.

### III. The Publications Are Also Defamatory *Per Quod.*

Defendants argue in a singular footnote that the "Complaint does not plead or even mention defamation *per quod*," and that "Plaintiff does not state that claim and depends instead upon defamation *per se*." (Mot. at 10 n.6). This is inaccurate. Soloway has adequately pled extrinsic facts and special damages for a *per quod* claim.

The Complaint contains a count for defamation. (Compl. at 34). There are two types of defamation under Illinois law: defamation *per se* and defamation *per quod*. *Pope v. Chronicle Pub. Co.*, 95 F.3d 607, 613 (7th Cir. 1996). The Complaint reads, "The Articles were defamatory, ***and*** in fact, ***also*** defamatory *per se*." (Compl. ¶122) (emphases added). By naming only "defamation" as a count and stating that the Articles were "also" defamatory *per se*, the Complaint adequately alleges both types of defamation, including *per quod*. *See Morton Grove Pharm., Inc. v. Nat'l Pediculosis Ass'n, Inc.*, 494 F. Supp. 2d 934 (N.D. Ill. 2007) (complaint stated "defamation" as a count, and the motion to dismiss was denied because statements were defamatory *per quod*). "[A] claim of defamation *per quod* is appropriate when the defamatory character of the statement is not apparent on its face, and plaintiff must plead and prove extrinsic facts to explain the injurious meaning of the statement." *Tunca v. Painter*, 2012 IL App (1st) 093384, ¶41 (2012).

Soloway pled the following relevant extrinsic facts: (1) Soloway's departure from Cushman was unrelated to any legal proceedings involving former-President Trump (Compl. ¶4);

8

(2) the information about the Cushman subpoena matter, including the order of contempt and reversal of that order, are available on the New York Court public docket (*Id.* ¶31); (3) two outside counsel law firms provided legal assistance to Cushman regarding its subpoena response in the Trump matter; Soloway did not personally interact with the court regarding this case (*Id.* ¶32); (4) the Trump matter went to trial, which the media covered extensively, and which Cushman was not a part of (*Id.* ¶34); (5) Under SEC regulations, Cushman was not required to publicly announce Soloway's departure (*Id.* ¶¶35, 58); (6) Defendants did not reach out to or connect with Soloway for comment before publishing the April Article (*Id.* ¶62). This is sufficient for a trier of fact to infer the publications were defamatory *per quod*. *Van Vliet v. Cole Taylor Bank*, 2011 WL 148059, at *5-7 (N.D. Ill. Jan. 18, 2011) (defamatory letter alleged plaintiff was performing poorly at work and plaintiff adequately pled extrinsic facts about the circumstances of her work to prove the letter was defamatory *per quod*).

Though "[i]t can be hard to know how specific is specific enough," to state special damages, it is "something less than the 'particularity' standard that Rule 9(b) prescribes for allegations of fraud." *Pippen v. NBC Universal Media, LLC,* 734 F.3d 610, 614 (7th Cir. 2013). In *Pippen*, plaintiff "identified specific business opportunities that had been available to him earlier but that, following the defendants' statements, were available no more." *Id.* This was found to be sufficient for defamatory *per quod* special damages. *See also Gryga v. Henkels & McCoy Grp., Inc.*, 2019 WL 3573565, at *5 (N.D. Ill. Aug. 6, 2019) (allegations that plaintiff did not get a job due to defendant's defamatory statements was sufficient); *Becker v. Zellner,* 684 N.E.2d 1378, 1387 (Ill. App. Ct. 1997) (allegations that defamatory statements caused or contributed to plaintiffs' loss of a particular prospective job opportunity were sufficient). Soloway alleged special damages.

*First*, Soloway alleged that he tried to engage two executive recruiting firms that had initially expressed strong interest in him, only to find himself later rebuffed following Defendants' publications. (Compl. ¶¶105-106). *Second*, Soloway alleged that he was questioned about the defamatory Article during a meeting with a job recruiter. (*Id*. ¶107). He had to explain to the recruiter the Article was false and he was not let go by Cushman. (*Id.*) It did not matter; he was denied assistance from that job recruiter and never heard from them again. (*Id.*) *Third*, Soloway alleged that he met with an in-house recruiter for a General Counsel position via Zoom who likely looked at the Article and subsequently rebuffed him. (*Id*. ¶110). Although he was told that he was a "perfect fit" and that his application would be "expedited" during the call, the individual also "asked about Soloway's online presence." (*Id.*) Soloway believed the person was simultaneously reviewing the Article because he saw their expression change. (*Id.*) "Mr. Soloway heard back about that position three weeks later with an automated rejection message" despite being told that he was an "incredible candidate, likely in 'high demand,' and [the recruiter] wanted to ensure his application was expedited." (*Id.*) *Fourth*, Soloway alleged that he has suffered financial injuries, including a loss of income and legal fees. (*Id*. ¶127). Although he does not "itemize" them, that is not necessary at this stage. *John E. Reid and Assoc., Inc. v. Netflix, Inc.*, 2022 WL 1330657, at *9 n.8 (N.D. Ill. Mar. 23, 2020) (although plaintiff did not "submit[] itemized losses," his "complaint [drew] logical connections between the conduct and the harm, and describe[d] in sufficient detail the types of monetary expenses [he had] incurred in trying to rectify that alleged harm.").

## IV.    The Fair Reporting Privilege Is Inapplicable.

The defense claims protection from Illinois' fair report privilege (Mot. at 11), but this is utterly baseless. The privilege requires two things: the content must report on an official proceeding and must be either complete, accurate, or a fair summary of it. *Solaia Tech., LLC v. Specialty Pub. Co.*, 852 N.E.2d 825, 843 (Ill. 2006); *Lowe v. Rockford Newspaper, Inc.*, 534

N.E.2d 549, 553 (Ill. App. Ct. 1989) ("the media's defamatory statement about the plaintiff [must] be found in the public record or proceeding to which the privilege is sought to be attached; if [it] does not…the privilege of fair and accurate report of public records does not apply."). Here, neither criterion is met. The Articles' titles clearly tie Soloway's departure to a sensational Trump matter, rather than reporting on the full proceedings. (Compl. ¶89).

*First*, Defendants' Articles are not focused on the "official proceeding" of Cushman's contempt order issue, but rather on Soloway's exit from Cushman. The aim was to report a salacious reason for a General Counsel change at a prominent real estate firm, not to update the public about a stale contempt ruling (with no new news). The focus on Soloway's departure is evident just from the Articles' headlines.

*Second*, to be considered a fair abridgement, "the report must convey to readers a substantially correct account" of the official proceedings. *Solaia*, 852 N.E.2d at 844. Defendants' publications are incomplete and inaccurate.[6] They wrongfully associate Soloway with the Trump contempt proceeding and exclude the truth: that his departure as Cushman GC had nothing to do with the Trump proceeding that occurred seven months earlier. *Kurczaba v. Pollock*, 742 N.E.2d 425, 444 (Ill. App. Ct. 2000) (fair report privilege inapplicable where statement was not a "fair abridgment" of the police proceedings because it added evidence that was not in the police report); *Black v. Wrigley*, 2017 WL 8186996, at *5 (N.D. Ill. Dec. 8, 2017) (fair report privilege inapplicable where "the sting of the [alleged] defamatory statement[s]" came from defendants' own reports and characterizations of the proceedings).

---

[6] Defendants argue that Soloway "does not dispute the accuracy of the Articles' reporting on the Cushman Contempt Proceedings…" (Mot. at 12). That is false. Soloway argues that "the publications' purported reasoning for Soloway's departure from Cushman was false and inaccurate." (*See e.g.,* Compl. ¶113).

11

Critically, the fair report privilege only protects a statement if it does not include additions that would "convey a defamatory impression" or "impute corrupt motives to anyone." *Solaia*, 852 N.E.2d at 845. Defendants did just that. By reporting on his departure from Cushman in conjunction with an unrelated, salacious Trump proceeding, Defendants convey a defamatory impression about Soloway's professional reputation and indict his integrity by innuendo. *See Berkos v. Nat'l Broad. Co. Inc.*, 515 N.E.2d 668, 674 (Ill. App. Ct. 1876) ("It is well established that statements made in the form of insinuation, allusion, irony, or question, may be considered as defamatory as positive and direct assertions of fact.").

Defendants rely on *Eubanks v. Northwest Herald Newspapers*, 922 N.E.2d 1196 (Ill. App. Ct. 2010). That case states exactly why their argument fails. Defendant in *Eubanks* published a "complete and accurate summary of an official report" from the police department. *Id.* at 1200. Defendant "did not make any omissions or additions to its publication that would give any sort of false impression." *Id.* Here, Defendants "reported" on the Cushman contempt order seven months after it occurred, without clearly explaining it had been lifted, and tying it—with no source whatsoever—to Soloway's departure from Cushman. This is the exact type of "omission or addition" that gives a false impression. *Id*.

Defendants also rely on *Mogan v. Portfolio Media, Inc.*, 2024 WL 532229 (N.D. Ill. Feb 9, 2024). That case is inapplicable. There, the alleged defamatory statements focused on facts that were derived directly from public court filings. Here, the Defendants string together two unrelated events to tell the untrue story that Soloway left his job for more scandalous reasons than those based in fact. Defendants did this for pure "clicks" and profit.

## V.     It Is Too Premature To Consider The Substantial Truth Defense.

Defendants argue that the false factual assertions about Soloway's exit are substantially true and thus not actionable. (Mem. at 13). There is nothing true to the connection made. *Gibson*

*v. Philip Morris*, 685 N.E.2d 638, 644 (Ill. App. Ct. 1997). It is also too premature to consider this defense. In federal court, "a motion to dismiss on grounds of truth may be proper… if the plaintiff more or less concedes the essential truth of the alleged defamatory statement, or if there is no basis for a reasonable jury to find that the alleged defamatory statement was not substantially true ***even as framed in the plaintiff's own allegations***." *Tamburo v. Dworkin,* 2011 WL 13315233, at *3 (N.D. Ill. Sept. 21, 2011) (emphasis added). Soloway has neither conceded the essential truth of the defamatory statements, nor framed the alleged defamatory statements as substantially true in the Complaint. Just the opposite, the Complaint repeatedly explains how the Articles create false "ties," "false association[s]" and misleading implications between Soloway's departure from Cushman and the Trump subpoena case that Cushman was involved in seven months prior. (*See e.g.,* Compl. ¶¶3, 44, 45, 50, 56, 63, 64, 73, 87, 103, 112, 113). Soloway's well-pled allegations must be viewed "in the light most favorable" to Soloway at this stage. *Levin v. Abramson*, 2020 WL 2494649, at *7 (N.D. Ill. May 13, 2020) (rejecting the substantial truth doctrine at the pleading stage as premature).

## VI.    Defendants' Publications Do Not Constitute Protected Opinions.

Defendants argue that their publications are protected opinions. (Mot. at 14). But the "test [for opinion] is restrictive," and a defamatory statement is only protected as opinion if it "*cannot* reasonably be interpreted as stating actual facts." *Kolegas*, 607 N.E.2d at 208 (court's emphasis). Defendants' publications do not present opinions but verifiable facts.

The publications' meaning is precise and readily understood. *Solaia Tech.*, 852 N.E.2d at 840. They state that Soloway left his role "in [the] Wake of [the] Company's Rebuke by Judge in Trump Probe," and that he was "Replace[d]" after he "Headed Legal Department During Trump Probe." (Compl. ¶89). This link between the two events is readily understood by a reader. *Kozlowski v. Greenridge Farm, Inc.*, 338 F.Supp.3d 828, 839 (N.D. Ill. 2018) (statement that

13

person was terminated "because she was pregnant" had a "precise and readily understood meaning" because employer's customers "would have taken it as the reason why they would no longer be working with her.").

The assertions about his exit can also be easily verified. *Solaia Tech.*, 852 N.E.2d at 840. The reason for Soloway's departure from Cushman is either because of the contempt proceeding or not. This situation is similar to *Tirio* and *Kolegas*, where statements were not opinions because they could be proven true or false. *Tirio v. Dalton,* 2019 IL App (2d) 181019, ¶47; *Kolegas*, 607 N.E.2d at 208; *see also Lott v. Levitt*, 469 F.Supp.2d 575, 585 (N.D. Ill. 2007) (email sounded as if the author was "in possession of objectively verifiable facts" and opinion protection was inapplicable). The Articles do not indicate the expression of personal views or opinions. Defendants claim that the Articles merely speculated on his "replacement," based on factual details regarding the nature of his departure. (Mot. at 15). But there were no disclosed facts detailing Soloway's exit from Cushman. According to SEC rules, Cushman was not obligated to disclose Soloway's leaving, and Soloway himself did not desire an announcement. (Compl. ¶35). There was no information available about why Soloway left Cushman, be it positive or negative. To convey that Soloway was dismissed due to routine motion practice occurring seven months earlier is incorrect and defamatory—and that factual assertion was made clearly in the Articles.

Finally, the "literary and social context" of the Articles signal that the defamatory statements are facts, not opinions. *Solaia Tech.*, 852 N.E.2d at 840. Defendant Guzman regularly covered legal community departures in his reporting at ALM. (Mot at 2; Compl. ¶¶73-76). He did not have an opinion column; he was a news reporter. (Compl. ¶25). The content was published to inform the legal community on a legal news website of the departure of Soloway from Cushman for negative reasons. The context is factual. *Pease v. Int'l Union of Operating Eng'rs Local 150,*

567 N.E.2d 614, 619 (Ill. App. Ct. 1991) (defamatory meaning was evident in part due to the context).

Defendants cite two cases, both of which are inapposite. In *Quinn v. Jewel Food Stores, Inc.*, defendant used words including "cocky" and "con artist," which have both negative and positive connotations. 658 N.E.2d 1225, 1231 (Ill. App. Ct. 1995). The statements were "not objectively capable of proof or disproof" because there were "no specific facts" that were objectively verifiable. *Id.* at 867. Here, the reason for Soloway's departure from Cushman was a verifiable fact, which Defendants chose not to verify. (Compl. at ¶ 61). In *Howell v. Blecharczyck*, the court held that the statement was nonactionable because all the facts supporting defendants' opinion were disclosed. 457 N.E.2d 494, 498-99 (Ill. App. Ct. 1983). The same cannot be said here, where Defendants only partially disclosed the facts, making it seem as if Soloway had been fired for cause and not responded to comment.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss should be denied; or alternatively, Plaintiff should be given an opportunity to amend his Complaint.

Dated: July 26, 2024

Respectfully submitted,

/s/ *Nicole E. Wrigley*
Nicole E. Wrigley
Maura T. Levine-Patton
**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
71 South Wacker Drive
Suite 1600
Chicago, IL 60606-4637
Telephone: 312-212-4940
NWrigley@beneschlaw.com
MLevine-patton@beneschlaw.com

*Counsel for Brett Soloway*

15

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on July 26, 2024, a copy of the foregoing document was filed electronically and served by e-mail to all parties of record via ECF.

/s/ *Maura T. Levine-Patton*
*One of the Attorneys for Plaintiff*